# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **PATRICIA FAYE ALLEN,** *Plaintiff,* v. **THE KROGER COMPANY,** *Defendant.* | **CIVIL ACTION NO. 5:18-cv-00389-TES** |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

The Kroger Company, Defendant in this action and hereinafter referred to as "Kroger," moves the Court to dismiss Plaintiff's complaint for failure to state a claim. [Doc. 2]. For the following reasons, Kroger's motion is **GRANTED IN PART**.

## FACTUAL BACKGROUND

Plaintiff Patricia Faye Allen brought this action after her daughter's death from an alleged adverse reaction between two prescription medications. *See generally* [Doc. 1-1]. She alleges that on March 23, 2016, one of Kroger's pharmacies in Macon, Georgia filled a prescription for amitriptyline for her daughter, Tracy Faye Edge. [*Id.* at ¶ 7]. On April 11, 2016, the same pharmacy filled Ms. Edge's prescription for morphine, which was prescribed by two doctors working for non-party Navicent Health, Inc. [*Id.* at ¶¶ 4-6]. Ms. Edge died on April 20, 2016, six days after filling her morphine prescription, from

the alleged fatal interaction between the morphine and amitriptyline she was prescribed. [*Id.* at ¶¶ 3, 9].

Plaintiff alleges that Kroger knew or should have known that morphine and amitriptyline are fatal when mixed and had a duty to, but failed to, do the following: (1) warn Plaintiff of the adverse effects of mixing the two medications [*id.* at ¶¶ 15, 17]; (2) refuse to dispense the morphine after dispensing the amitriptyline [*id.* at ¶¶ 18, 20, 25, 35]; (3) monitor Plaintiff's prescription drug history [*id.* at ¶ 19]; (4) disclose material facts about the prescriptions [*id.* at ¶ 24]; (5) create and follow guidelines to ensure prescriptions do not have adverse reactions to each other [*id.* at ¶¶ 33, 34]; and (6) call Ms. Edge's doctor to inquire about the appropriateness of prescribing morphine and amitriptyline simultaneously [*id.* at ¶¶ 36, 37]. Plaintiff alleges that the "duty to warn and [to] compare prescription profiles" arises under the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"), 42 U.S.C. § 1396r-8(g).

Kroger now moves to dismiss Plaintiff's complaint for failure to state a claim, arguing that it had no statutory or common-law duty to monitor Ms. Edge's prescriptions or prevent her from combining adverse medications. [Doc. 2-1]. The Court partially agrees and finds as follows.

**DISCUSSION**

A. <u>**Standard of Review**</u>

When ruling on a 12(b)(6) motion, the Court must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if the plaintiff alleges sufficient factual matter to state a claim for relief that is plausible on its face, and she must state more than "unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). She must also "plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action," *id.*, such that the factual allegations contained in the complaint are "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

When assessing a motion to dismiss for failure to state a claim, the Court employs a two-step framework. *McCullough*, 907 F.3d at 1333. First, the Court identifies and disregards allegations that are "no more than mere conclusions," since "[c]onclusory allegations are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Second, the Court "assume[s] any remaining factual allegations are true and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## B. Kroger's Duty Under OBRA '90

First, Plaintiff alleges that Kroger had a "duty to warn and compare prescription profiles" under the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"). [Doc. 1-1, ¶ 16]. That duty allegedly carries with it Kroger's obligation to provide "(1) patient counseling, (2) medication adherence, and (3) side effect management." [*Id.*]. Plaintiff filed a similar lawsuit before the undersigned earlier this year against multiple defendants, including Kroger, Ms. Edge's prescribing physicians, and several pharmaceutical manufacturers based on the same operative facts as alleged in this complaint. *See Allen v. Endo Pharm., Inc.*, No. 5:18-cv-00132-TES (M.D. Ga. Apr. 19, 2018), ECF No. 1. In that case, Plaintiff moved to amend the complaint to allege, as she does in this case, that the defendants had a duty to warn and compare prescription profiles under OBRA '90. *Id.* at ECF No. 57-2, ¶¶ 19, 21, 39. The Court denied her motion to amend as futile, finding that

> Plaintiff's OBRA claim could not survive a motion to dismiss because Plaintiff cannot state a claim against the Defendants under that statute. The section of OBRA Plaintiff relies on did not require the Defendants to review the deceased's drug profile as Plaintiff asserts. 42 U.S.C. § 1396r-8(g). Rather, OBRA mandated that the individual *states* adopt expanded standards of pharmaceutical care for Medicaid recipients as a condition on the receipt of federal Medicaid funds. The drug profile review that Plaintiff refers to was part of the guidance to *states*, not private actors, on how to comply with OBRA's mandate. *Id.* Thus, although Defendants could have conceivably violated a state law that enacted the OBRA mandate, the Defendants, at least as private actors, could not have violated OBRA itself.

*Allen*, ECF No. 74, p. 14 (emphasis in original). The Court also found that OBRA '90 does not create a private right of action through which Plaintiff could assert her claims. *Id.* at pp. 14-15. Thus, in this case (as in the previous case), Kroger owed no duty to "warn and compare prescription profiles" under OBRA '90. Given the Court's previous ruling that private actors cannot violate OBRA '90, Plaintiff's claims arising under that statute are patently frivolous and dismissed with prejudice. *See Kalpak v. EMC Mortg. Corp.*, No. 3:11-cv-49 (CAR), 2011 WL 2711182, at *2 n.3 (M.D. Ga. July 13, 2011).

## C. Kroger's Duty Under Georgia Statute and Common Law

Kroger also argues that it owed Ms. Edge no duty whatsoever under Georgia law to review her drug profile, warn of adverse effects, or refrain from filling her prescriptions because "[t]hose duties rest with the prescribing physician." [Doc. 2-1, p. 3]. Kroger relies on two cases for this proposition, both of which are inapposite.

First, Kroger relies on an excerpt from *Walker v. Jack Eckerd Corp.*, 434 S.E.2d 63 (Ga. Ct. App. 1993), which states in pertinent part:

> [A] pharmacist has no duty to warn the customer or notify the physician that the drug is being prescribed in dangerous amounts, that the customer is being over medicated, or that the various drugs in their prescribed quantities could cause adverse reactions to the customer. It is the duty of the prescribing physician to know the characteristics of the drug he is prescribing, to know how much of the drug he can give his patient, to elicit from the patient what other drugs the patient is taking, to properly prescribe various combinations of drugs, to warn the patient of any dangers associated with taking the drug, to monitor the patient's dependence on the drug, and to tell the patient when and how to take the drug. Further, it is the duty of the patient to notify the physician of the other drugs the patient is taking.

5

434 S.E.2d at 67-68 (citations omitted). But the *Walker* court specifically disclaimed its holding by adding, "[T]his case is not intended to serve as controlling precedent for cases involving pharmacists' duties arising after January 1, 1993," given the Georgia State Board of Pharmacy's promulgation of new rules effective on that date. *Id.* at 69. Those new rules, codified at Ga. Code Ann. §§ 26-4-83 to -85 and Ga. Comp. R. & Regs. 480-31-.01, include the following provision:

> (b) A pharmacist shall review the patient record and each prescription drug order presented for dispensing for the purposes of promoting therapeutic appropriateness by identifying:
>
>> (1) Overutilization or underutilization;
>> (2) Therapeutic duplications;
>> (3) Drug-disease contraindications;
>> (4) Drug-drug interactions;
>> (5) Incorrect drug dosage, dosage form, or duration of drug treatment;
>> (6) Drug-allergy interactions;
>> (7) Clinical abuse or misuse.
>
> (c) Upon recognizing any of the above situations, the Pharmacist shall take appropriate steps to avoid or resolve the situation or problem which shall, if necessary, include consultation with the prescribing practitioner.

Ga. Code Ann. § 26-4-84.[1] This provision clearly imposes a duty on pharmacists to review a patient's drug history to identify "drug-drug interactions" and, upon identification of such interactions, "take appropriate steps" to mitigate any danger. In doing so, it unequivocally abrogates the standard imposed by *Walker* regarding the duties

---

[1] The regulation codified at Ga. Comp. R. & Regs. 480-31-.01(b) is substantially similar to the one codified at Ga. Code Ann. § 26-4-84, with minor, inconsequential changes.

pharmacists owe to patients in seven specific situations, including the one at issue in this case.[2] Thus, although Kroger's pharmacists may not have had a duty to Ms. Edge under Georgia common law, the Court finds that the Georgia General Assembly clearly imposed a duty on pharmacists under particular circumstances, specifically including the duty to monitor potential drug-drug interactions.

Next, Kroger relies on *Chamblin v. K-Mart Corp.*, 612 S.E.2d 25 (Ga. Ct. App. 2005), for its argument that "the duty to warn patients about adverse effects of a prescribed medication rests upon the prescribing physician and not upon the pharmacist." [Doc. 2-1, p. 7]. However, *Chamblin* dealt with the "narrow issue of a pharmacist's duty to warn a customer of a drug's potential side effects." 612 S.E.2d at 28. In considering that narrow issue, the *Chamblin* court looked to a separate provision of the State Board of Pharmacy regulations relating to patient counseling, which states:

> 1. Upon receipt of a Prescription Drug Order and following a review of the patient's record, the dispensing Pharmacist shall personally offer to discuss matters which will enhance or optimize drug therapy with each patient or caregiver of such patient. Such discussion shall be in person, whenever practicable, or by telephone and shall include appropriate elements of patient counseling, based on the professional judgment of the pharmacist. Such elements may include but are not limited to the following:
>
>   (i) the name and description of the Drug;

---

[2] Kroger and the Georgia Court of Appeals both recognize that the standard contained in *Walker* is abrogated. *See* [Doc. 2-1, p. 8]; *Chamblin v. K-Mart Corp.*, 612 S.E.2d 25, 28 (Ga. Ct. App. 2005). Nonetheless, Kroger encourages the Court to effectively ignore the Georgia Legislature's abrogation and implicit overruling of *Walker* and hold that pharmacists such as Kroger's are still protected by the learned intermediary doctrine. This the Court cannot and will not do. The Georgia General Assembly passed a clear statute and this Court will enforce it as written.

(ii) the dosage form, dose, route of Administration, and duration of drug therapy;
(iii) intended use of the Drug and expected action;
(iv) special directions and precautions for preparation, Administration, and use by the patient;
(v) common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur;
(vi) techniques for self-monitoring drug therapy;
(vii) proper storage;
(viii) prescription refill information;
(ix) action to be taken in the event of a missed dose; and
(x) Pharmacist comments relevant to the individual's Drug therapy, including any other information peculiar to the specific patient or Drug.

[. . .]

4. A Pharmacist shall not be required to counsel a patient or caregiver when the patient or caregiver refuses such consultation.

Ga. Comp. R. & Regs. 480-31-.01(c).[3] Under this provision, pharmacists are only required to offer counseling regarding severe side effects, but they are not required to "take appropriate steps to avoid or resolve" such side effects as they are with potential drug-drug interactions. Put simply, the risk of harm at issue in this case (i.e. drug-drug interaction) is covered by Ga. Code Ann. § 26-4-84, while the risk of harm at issue in *Chamblin* (i.e. serious side effects from the use of a single drug) is covered solely by subsection (c) of the applicable Georgia Board of Pharmacy rule (also codified at Ga. Code Ann. § 26-4-85), and those regulations impose distinct duties and requirements on

---

[3] This provision is now also codified at Ga. Code Ann. § 26-4-85(b), (e).

pharmacists. Accordingly, the ruling in *Chamblin*, which determined that Georgia pharmacists do not have a duty to warn of potential side effects from a single medication, is not applicable in this case.[4] Instead, the Court finds that Kroger had a duty under Ga. Code Ann. § 26-4-84 to review Ms. Edge's prescription record, identify potential drug-drug interactions, and take "appropriate steps" to mitigate the risk of those interactions.

Plaintiff alleges in her complaint that Kroger failed to monitor Ms. Edge's prescription drug history, to create guidelines to ensure that prescriptions do not have adverse reactions, and to act accordingly by either warning Ms. Edge or her physicians or refusing to dispense the medication. These allegations are enough to "nudge [Plaintiff's] claims across the line from conceivable to plausible." *McCullough*, 907 F.3d at 1335 (quoting *Twombly*, 550 U.S. at 570). At this point, more factual development is necessary to determine whether Kroger complied with its duties under Georgia law.

---

[4] Nor is the Southern District of Georgia's decision in *Coney v. Mylan Pharmaceuticals, Inc.*, No. 6:11-cv-35, 2011 WL 3607166 (S.D. Ga. Aug. 16, 2011), which cites *Chamblin* and is also concerned with a pharmacy's duty to warn of the side effects of a particular drug. Indeed, in addition to *Chamblin* and *Coney*, all of the Georgia and Eleventh Circuit cases considering the scope of pharmacists' duties after the Georgia General Assembly and Board of Pharmacy passed the applicable pharmaceutical regulations are inapposite. *See Allen v. United States*, No. CV 115-147, 2018 WL 934895 (S.D. Ga. Feb. 16, 2018) (concerning the application of the counseling requirements of Ga. Comp. R. & Regs. 480-31-.01(c)(3) to hospital inpatients); *Roberts v. Quick Rx Drugs, Inc.*, 807 S.E.2d 476 (Ga. Ct. App. 2017) (recognizing that Ga. Code Ann. § 26-4-85 sets the standard of care for pharmaceutical counseling in Georgia and applying it to pharmacists who dispensed incorrect drugs); *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70, 74 (Ga. Ct. App. 1997) (considering pharmacists' duties to warn of the dangers associated with discontinuing the use of a drug and disregarding the Board of Pharmacy's regulations as being passed after the events giving rise to the action occurred).

### D. Plaintiff's Failure to Comply with Ga. Code Ann. § 9-11-9.1

Finally, Kroger argues that Plaintiff's complaint should be dismissed for her failure to comply with the expert affidavit requirements of Ga. Code Ann. § 9-11-9.1. Kroger's argument is foreclosed by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), in which the Supreme Court held that federal courts sitting in diversity are to apply state law to substantive issues and federal law to procedural issues. *See Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987). This Court has consistently held that the expert affidavit rules of Ga. Code Ann. § 9-11-9.1 are purely procedural and therefore not applicable in cases before the Court under diversity jurisdiction. *See, e.g.*, *McLeod v. Ingram*, No. 7:16-CV-185, 2017 WL 3446024, at *1 (M.D. Ga. Aug. 10, 2017); *Antoine v. Navicent Health, Inc.*, No. 5:18-cv-00048-TES, 2018 WL 6531668, at *16 (M.D. Ga. Dec. 12, 2018). Therefore, Plaintiff's failure to comply with Ga. Code Ann. § 9-11-9.1 does not bar her case.

### CONCLUSION

For the reasons stated herein, Kroger's Motion to Dismiss [Doc. 2] is **GRANTED IN PART**. The Court **DISMISSES** Plaintiff's claims under OBRA '90 for failure to warn **with prejudice**. The remaining portions of Kroger's Motion to Dismiss are **DENIED**. The stay of discovery previously entered by the Court [Doc. 12] is hereby **LIFTED**. The parties are **ORDERED** to confer within 20 days of the date of this Order and to develop a Proposed Scheduling and Discovery Order to be submitted to the Court no later than 30 days from the date of this Order. Said Proposed Scheduling and Discovery Order shall

be submitted in accordance with the guidelines contained in the Court's Rules 16/26 Order [Doc. 6].

**SO ORDERED**, this 21st day of December, 2018.

<u>**s/Tilman E. Self, III**</u>
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**